### STATE v. MOORE.

1. An indictment was headed with the name of the State and county, and alleged the county in which, and the court house at which, the court was holden, and then alleged that "the jurors of and for the county of ——— aforesaid, on their oaths present," &c. *Held*, that all this was a part of the caption, which may be amended at any time ; so that, even if it were proper to insert the name of the county where it was omitted, the defect would not be fatal. But it is not a defect, as in substance and proper intendment the word is there.
2. The omission to state the court house or other place at which the crime was committed, the county being named, was not a fatal defect—the place in this case not being a matter of essential description of the crime.
3. The indictment charged that the defendant, on a day stated and in the county named, "with force and arms, did wilfully and maliciously set fire to and burn the gin house of F., contrary," &c. *Held*, that the indictment charged all that was necessary to make out the crime of burning a gin house under the statute. *Gen. Stat.*, ₂ 2480.[1]
4. Under indictment for burning a gin house, evidence of defendant's pecuniary condition is irrelevant and incompetent.
5. In stating to the jury that it was possible for the prosecutor to have identified cotton and a basket, and in permitting the solicitor to give his version of the facts to the jury, the Circuit Judge committed no error.

Before Cothran, J., Abbeville, September, 1885.

---

[1] See *State* v. *Gwinn* (2), *ante*, page 146.—Reporter.

The facts are sufficiently stated in the opinion of this court. The grounds in arrest of judgment are stated in the opinion; the grounds for a new trial were as follows:

1. Because it was error in the presiding judge to refuse to allow the defendant to offer evidence of his pecuniary circumstances, the direct tendency of such proof being to show that he had no motive for the commission of larceny, and the theory of the State being that he first stole the goods of the prosecutor and then burnt the gin house to conceal the theft.

2. Because it was error in the presiding judge to allow the solicitor to argue to the jury, against the earnest protest of the defendant, that the defendant had, for some time before the night of the burning, been stealing the cotton of the prosecutor out of his gin house, although there was no evidence on that point, and although the defendant was being tried for arson only.

3. Because it was error in the presiding judge to allow the solicitor to persist, in spite of the earnest protest of the defendant, in stating to the jury that the witness, Lipscomb, said that when he was at defendant's house about the last of October, 1884, defendant told him that he had no more cotton left, when in point of fact the solicitor utterly misconceived the witness, Lipscomb's, testimony, his statement being that defendant told him if he had come one day later, he would have been through, without saying through what.

4. Because it was error in the presiding judge to charge the jury that it was possible for the prosecutor to identify cotton in the possession of the defendant.

5. Because it was error in the presiding judge to charge the jury that it was possible for the prosecutor to identify a basket in the possession of the defendant, and that if they believed that the prosecutor had identified the basket, they might infer from that and the other facts claimed to be proved that the defendant burnt the gin house.

6. Because the evidence was totally insufficient to base a verdict of guilty upon, and it was error in the presiding judge to charge the jury that they might convict the defendant upon the evidence offered by the State.

7. Because the said verdict and judgment are contrary to the law and the evidence.

*Mr. E. G. Graydon*, for appellant.

*Messrs. M. L. Bonham, jr.*, and *W. C. McGowan*, contra.

March 8, 1886.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The defendant was tried for arson at the September extra term of the Court of General Sessions for Abbeville County.   He was found guilty, with a recommendation to mercy, and was sentenced to the penitentiary for the term of ten years.   Before sentence, his counsel moved in arrest of judgment on account of alleged defects in the indictment, and also for a new trial, both of which motions were overruled. These motions are renewed here by way of appeal.

The indictment was as follows:

"THE STATE OF SOUTH CAROLINA.—Abbeville County.

"At a Court of General Sessions, begun and holden in and for the County of Abbeville, in the State of South Carolina, at Abbeville court house, in the county and State aforesaid, on Monday, the second day of February, in the year of our Lord one thousand eight hundred and eighty-five, the jurors of and for the County of —— aforesaid, in the State of South Carolina aforesaid, that is to say, upon their oaths, present that John Moore, on the fourteenth day of November, in the year of our Lord one thousand eight hundred eighty-four, with force and arms, in the County of Abbeville and State aforesaid, did wilfully and maliciously set fire to and burn the gin house of Francis Arnold, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State aforesaid."

On the motion in arrest of judgment below, it was urged that the indictment was fatally defective, because: 1st. That no county was mentioned in the indictment as the county of the jurors, the word "Abbeville" being left out, as above.   2d. That it was not alleged that the offence was committed at Abbeville court house. 3d. That it was not alleged that the offence was committed "feloniously," the word "felonious" having been omitted.   4th. That it was not alleged that the gin house was within two hundred yards of the dwelling-house.   5th. It was not alleged to be "ap-

purtenant" to the dwelling.   6th. That it was not alleged to be within the curtilage.   7th. No allegation that it was an out-house of the prosecutor.   And 8th. That it was not alleged to be a parcel of the dwelling, "the proof offered having shown that the said gin house was within two hundred yards of, and appurtenant to, the said dwelling-house."

An indictment consists of three prominent features, (1) the caption, (2) the charge, and (3) the conclusion.   The caption is the heading to the indictment, and is not strictly a part of it. *State* v. *Williams*, 2 *McCord*, 301; *Vandyke* v. *Dare*, 1 *Bail.*, 65.   Only in that sense the expression above, that it is one of its features, is used.   It has been defined to be that part of the record in a criminal case which comprehends the judicial history of the cause to the time of the finding of the indictment.   *Bish. Cr. Proc.*, ch. XI., § 147.   It is an entry record, showing when and where the court is held, &c.

There has been some contrariety of opinion as to where the caption ends and the indictment begins, and especially whether the words, "The jurors, &c., on their oaths, present," constitute a part of the caption or a part of the indictment.   In England and in many of the States following the English practice, these words are termed the "commencement" of the indictment, and not considered to be a part of the caption.   But in our State it has been distinctly held that they are part of the caption; that it is mere introductory matter, and constitutes no portion of the indictment.   In the case of *State* v. *Creight* (1 *Brev.*, 169), Trezevant, J., said the caption ends with the words, "upon their oaths, present," and Grimke, J., said (p. 170), "It was resolved, in an earlier unreported case (*State* v. *James Johnston*), that the part of the indictment here in question was a part of the caption."

Now, the caption being no part of the indictment (*State* v. *Williams, supra*), and the omitted word here, "Abbeville," being a part of the caption (*State* v. *Creight, supra*), it follows that the law in reference to defects in the caption, and not the rule in reference to the charging part or the conclusion, should govern where objection is made on account of alleged defects.   And it must be remembered that the rules in such cases are quite different.   In reference to the charging part, the law is extremely

strict, requiring the closest observance to established forms and precedents, and demanding a complete description of such facts and circumstances as constitute the crime, without inconsistency or repugnancy. Manner, time, and place must be alleged, and even particular words and phrases sometimes, though they may seem technical, must be used.

This strictness is, however, not required in reference to the caption, the distinction in the two cases being that the charging part is really the matter which the accused is called upon to meet and answer, while the caption is a mere history or record of the case, up to the finding of the indictment, containing the name of the court, county, and State, and where and by whom the.indictment has been found. It is important for the accused to be informed fully as to the crime with which he is charged, so that he can prepare for his defence; so that he can be shielded against a second trial for the same offence; and it is important, too, to the court that the crime charged should be set out with great particularity, so that, in looking at the record, it may decide whether the facts charged constitute an offence within its jurisdiction, whether a conviction will warrant punishment, and what the punishment shall be. These reasons, however, do not apply to the caption, and, accordingly, as we have said, the rule as to the caption is much more liberal than as to the charging part of the indictment. It was held in the case of *State* v. *Creight, supra,* that the caption may be made up or amended at any time, &c. The opinion in that case was based upon the case of *State* v. *Johnston, supra,* in which a motion was made in arrest of judgment on several grounds, one of which was that the caption did not mention either the day or the year when the court was held, at which the bill was found. The court unanimously overruled the motion.

In the case of *State* v. *Williams, supra,* a similar motion was made on the ground that it was not set out in the caption, that it was a "special court." The court said: "The caption must set forth with sufficient certainty the court in which, the jurors by whom, and also the time and place at which, the indictment was found, so that it might appear on the face of the indictment that the court had jurisdiction of the offence, that the jurors were

sworn, and that the court was holden at the proper time." But
in regard to the omission complained of, it said further: "There
is no doubt, however, about the right to amend the caption of
an. indictment at any time, and leave is therefore granted to
amend." And in *Vandyke* v. *Dare, supra,* the court held and
said : "The caption is no part of the indictment, &c.; setting out
the style of the court, the time at which, the names of the jurors,
&c., may be amended at any time by the journals of the court"—
further saying : "It has become so much a matter of course, that
it is usually left in blank until some occasion occurs which ren-
ders its perfection necessary, and then leave is obtained for filling
it up as a matter of course." These cases have been referred to
to show that even if the word "Abbeville," which is omitted here,
ought to have been inserted, yet that the defect is not fatal; it
may be inserted afterwards.

But is the omission of this word a legal defect? We think
not; because, though the word itself does not appear, yet in sub-
stance and proper intendment it is there. As we have seen, the
caption of an indictment in this State does not end until it reaches
the words, "upon their oaths do present." Down to that point,
all the preceding part constitutes the caption. When the County
of Abbeville, then, is used in the preceding part, and when im-
mediately following comes "the jurors of and for the County of
————— aforesaid," is not that in substance saying the County of
Abbeville? 1 *Saund.,* 308, *note* 1, cited in *State* v. *Lamon,*
3 *Hawk.,* 178. And would it not be a subtle distinction indeed
to hold otherwise? See the case of *State* v. *Coleman* (8 *S. C.,*
243), a case of murder, and where the defect complained of was
in the body of the indictment, the charging part, and yet it was
not held fatal. See *Reeves* v. *State,* 20 *Ala.,* 33.

The next objection is that the offence was not alleged to have
been committed at "Abbeville Court House." The purpose in
alleging the place is to show that the court has jurisdiction; or,
at least, this is one of its purposes. True, the usual form is, as
demanded by this exception, and according to strict and usual
form it is admitted that the words "Abbeville Court House"
should have been inserted. But the question is, is its omission
fatal where the proper county is alleged? Is it imperatively

necessary that both a town and a county shall be mentioned? Where the place is not a matter of essential description of the crime, but is alleged as a matter of jurisdiction only in the court, the reason of the rule, it seems, would be satisfied with us by an allegation of the county simply, as our courts have jurisdiction over the respective counties in which they sit.

In the early times of the common law jurors were considered as witnesses, and no others were summoned or expected to be heard as witnesses except the jurors. They were sworn to speak the truth, and they were expected to speak from their own knowledge and not from the testimony of others. Hence the practice of summoning jurors from the immediate vicinage. And hence, too, so as to enable the court to issue a proper *venire* for proper jurors, it was necessary for the record to disclose the place where the offence occurred, to wit, a particular locality in the county. After the jurors ceased to be witnesses, and therefore there was no longer any necessity for the assignment of a particular locality, so far as summoning the jurors was concerned, still the practice of naming a town or ville was kept up, and in this way the present form of indictments with us, in which the court house of the county is usually named as the place of the offence, has been adopted.

The old practice, however, in England was altered by certain statutes, and Mr. Bishop says that the "effect of these statutes seems pretty plainly to have been in England to change the common law rule, and leave it unimportant for the pleader to allege any place of the commission of the offence other than the county." He further says: "In the United States the matter stands substantially as it did in England after the enactment of statute 6 *Geo. IV.*, ch. 50, § 13. There is believed to be no State in the Union wherein the jurors are summoned *de vicineto*, but in all the States they come *de corpore comitatus*, from the body of the county, not from the immediate neighborhood in which the offence was committed. And the general rule in our States, therefore, is that there is no need for the indictment to allege the particular township or other like locality within the county where the offence was committed. It may simply allege it to have been committed within the county which it mentions, without more

words." *Bish. Cr. Proc.*, § 93. And at section 97 he says: "Some of the particular instances in which it has been held not essential to mention more than the county in the indictment are murder, affray, &c."—citing *Studstill* v. *State*, 7 *Ga.*, 2; *Dillon* v. *State*, 9 *Ind.*, 408; and *State* v. *Lamon*, 3 *Hawk.*, 175. See our case of *State* v. *Thayer*, 4 *Strob.*, 286. It seems to be conceded in most of the States that in misdemeanors the mention of a town is not necessary, but in some of the States, in indictments for capital felonies, it appears to be necessary, or, at least, the practice has always been adhered to, as stated in *Com.* v. *Springfield*, 7 *Mass.*, 9. We are of opinion, however, that although this practice is usual, yet its omission, the defect complained of here, was not fatal. See case of *State* v. *Fant*, 2 *Brev.*, 487.

The other grounds assigned for the motion in arrest of judgment may be considered together, and we say generally that the offence with which the accused was charged, and of which he has been convicted, was a statutory offence (*Gen. Stat.*, § 2480), making the wilful and malicious setting fire to or burning any house, &c., * * * specifying certain houses, among them gin house, &c., a crime. Whether said house be within the curtilage, appurtenant, or a part of the dwelling or otherwise, still it is the crime made by the act, if wilfully and maliciously done. Such being the fact, we think when the indictment charges the burning or setting fire to as wilful and malicious, specifying the house, as here, and the county, that the offence has been fully, fairly, plainly, and substantially set forth, and also as formally as the act requires.

As to the motion for a new trial, we find nothing in the grounds relied on to warrant a reversal of the Circuit Judge's order on that subject. The testimony offered in regard to the pecuniary condition of the accused was irrelevant and incompetent, and therefore properly excluded. The fact that the Circuit Judge said to the jury that it was possible for the prosecutor to identify cotton and a basket, &c., was no error of law, if error at all. Nor was it error of law to permit the solicitor to give his version of the facts to the jury, even if he stated the testimony incorrectly in the opinion of the other side.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.